**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CHARLES A. WAKEFIELD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.**   **CIV-17-1006-R** |
| | ) | |
| **SODEXO USA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, COMBINED WITH BRIEF IN SUPPORT</u>**

Respectfully submitted,

RIGGS, ABNEY, NEAL, TURPEN,
  ORBISON & LEWIS, P.C.

Melvin C. Hall, OBA # 3728
528 NW 12th Street
Oklahoma City, OK 73103
(405) 843-9909—Office
(405) 842-2913—Fax
mhall@riggsabney.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

INTRODUCTION .......................................................................................................... 1

RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................................................................................ 5

STANDARD FOR SUMMARY JUDGMENT ................................................................ 17

ARGUMENT .............................................................................................................. 18

    I. THE ELEMENTS OF A PRIMA FACIE CASE ARE THE SAME WHETHER THE CASE IS BROUGHT UNDER § 1981 OR TITLE VII ................................. 18

    II. SODEXO CONCEDES THAT WAKEFIELD HAS STATED A PRIMA FACIE CASE OF § 1981 RACE DISCRIMINATION ........................................................ 18

    III. PLAINTIFF'S 42 U.S.C. § 1981 RETALIATION CALIM ........................... 19

    IV. WAKEFIELD HAS PROVIDED AMPLE EVIDENCE TO ESTABLISH PRETEXT .......................................................................................................... 26

CONCLUSION ........................................................................................................... 30

CERTIFICATE OF SERVICE ....................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Conroy v. Vilsack,* 707 F.3d 1163, 1181-82 (10th Cir. 2013) ............................................ 23

*EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1191 (10th Cir. 2000) .......... 19

*EEOC v. PVNF, LLC.,* 487 F.3d 790, 804 (10th Cir. 2007) ................................................ 22

*Foster v. Mountain Coal Co.,* 830 F.3d 1178, 1186 (10th Cir. 2016) ................................ 20

*Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1218 (10th Cir. 2002) ................... 28, 29

*Hansen v. Skywest Airlines,* 844 F.3d 914, 926 (10th Cir. 2016) ...................................... 22

*Hertz v. Luzenac America, Inc.,* 370 F.3d 1014, 1016 (10th Cir. 2004) .......................... 21

*Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008) ........... 21

*Maldonado v. City of Altus,* 433 F.3d 1294, 1302 (10th Cir. 2006) ................................. 17

*Marquez v. Baker Process, Inc.,* 42 F.App'x 272, 276 (10th Cir. 2002) ......................... 20

*Metzler v. Fed. Home Loan Bank Topeka,* 464 F.3d 1164, 1174 (10th Cir. 2006) .......... 28

*O'Shea v. Yellow Tech. Servs, Inc.,* 185 F.3d 1093, 1096 (10th Cir. 1999) ..................... 17

*Parker Excavating, Inc. v. Lafarge W., Inc.,* 863 F.3d 1213, 1220 (10th Cir. 2017) ....... 19

*Plotke v. White,* 405 F.3d 1092, 1093-94 & 1103 (10th Cir. 2005) .................................. 17

*Proctor v. United Parcel Svcs.,* 502 F.3d 1200, 1208 (10th Cir. 2007) ........................... 22

*Randle v. City of Aurora,* 69 F.3d 441, 453 (10th Cir. 1995) ........................................... 17

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000) ........... 19, 24, 26

*Roberts v. International Business Machines Corp.,* 733 F.3d 1306, 1310 (10th Cir. 2013) ...................................................................................................................... 27

*Tex. Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981) .......................... 20

*Thomas v. Berry Plastics Corp.,* 803 F.3d 510, 515 (10thCir. 2015) .............................. 26

*Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir. 2002) .............. 17

*Univ. of Tex. S.W. Med Center v. Nassar,* 133 S.Ct. 2517, 2534 (2013) ......................... 20

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 355 (2013) .................................... 19

*Ward v. Jewell,* 772 F.3d 1199, 1203 (10th Cir. 2014) ..................................................... 20

*Zisumbo v. Ogden Regional Medical Center,* 801 F.3d 1185, 1200 (10th Cir 2015) ....... 24

*Zokari v. Gates,* 561 F.3d 1076, 1081 (10th Cir. 2009) .................................................... 24

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, COMBINED WITH BRIEF IN SUPPORT</u>

Plaintiff, Charles Wakefield (Wakefield), through his attorney of record, Melvin C. Hall of Riggs, Abney, Neal, Turpen, Orbison & Lewis, for his response to Defendant's Motion for Summary Judgment, Combined with Brief in Support (DKT #. 27), states:

## <u>INTRODUCTION</u>

In its motion for summary judgement Defendant, Sodexo USA (Sodexo) asserts:

the plaintiff's termination (the only adverse action at issue in this case) occurred only after a well-documented and unbroken three-and-a-half-year period of disciplinary write-ups with no appreciable improvement (or even recognition of the underlying issues) from the plaintiff.

(DKT # 27, p.1). This statement is blatantly false. Wakefield's so called three-and-a-half-year period of disciplinary write-ups was disrupted by his 2014 evaluation received from Kevin Benda which states an overall "meets expectations." Sodexo's assertions are also undermined by the 2% merit raise given to Wakefield in January 2015 and the 10% raise given to Wakefield in September 2015. Sodexo also fails to mention that in August 2015, Sodexo's Human Resources Director, Lisa Failing (Failing) advised Wakefield that she heard he was doing a good job.

Also in Sodexo's introduction, on page 1, it states:

In this role he was the top-ranking manager responsible for supervising and managing the custodial staff assigned to clean the eleven Norman public schools east of Flood Avenue (the "Norman East Zone").

This statement is knowingly false. Wakefield's supervisor, General Manager Kevin Benda (Benda) was the top ranking manager responsible for supervising and managing the

i

custodial staff assigned to clean the Norman East Zone. Wakefield supervised the night shift for the Norman East Zone, and Benda supervised the day shift, as well as all Norman Public Schools, East and West Zones. William Humphrey (Humphrey), who is a white male and Wakefield's similarly situated counterpart, was responsible for the night shift assigned to clean the Norman West Zone.

Sodexo continues on page 1 of its Introduction:

> the plaintiff failed to keep his schools consistently clean, and he never corrected (or even attempted to correct) the serious lapses in leadership detailed in the six disciplinary letters, three Performance Improvement Plans, and numerous written Constructive Counseling forms he received from two different supervisors over three and a half years. (Facts 3-14, below).

This statement is false. Unlike Wakefield's similarly situated counterpart, Humphrey, Wakefield consistently inspected his buildings every night, and submitted shift reports memorializing that the building were consistently clean. This was despite that Benda failed to supply sufficient staff, failed to maintain and repair auto scrubbers, and failed to furnish equipment such as mops, brooms, and cleaning supplies. However, to cover up his incompetence, Benda blamed Wakefield for his failure. Benda conspired with Lisa Failing, District Manager, Joseph Heeb, and Vice President, Chuck Thomas to falsely establish a paper trail to justify terminating Wakefield and make the termination not appear to be for discriminatory and retaliatory reasons. The evidence will show that Sodexo decided to terminate Wakefield as early as September 28, 2015, and the written warning Wakefield received in January 2016 was a subterfuge designed to cover up its discriminatory and retaliatory motive.

Sodexo quotes a February 2016 email from the Norman North High School (NNHS) principal stating that the commons floor was a lost cause. Significantly, this email was addressed to Benda and not to Wakefield. In fact, the email does not name Wakefield, mention Wakefield, Wakefield was not copied on the email, and Benda never brought the email to Wakefield's attention. The fact is on February 18, 2016, Wakefield visited, inspected, and cleared NNHS and memorialized his inspection in his February 18, 2016 shift report. However, Sodexo seems to believe that the problems mentioned in the February 19, 2016, email were Wakefield's fault, except that the problems were clearly Benda's fault. Throughout Sodexo's motion for summary judgment it blames Wakefield for the failings of Benda.

Continuing in its Introduction on page 3, Sodexo states: "the plaintiff has not presented and cannot present evidence that the articulated reasons for the termination decision (i.e., his continuous and unmitigated performance failures which resulted in repeated customer complaints) were a pretext for intentional race discrimination." Again, Sodexo's assertions of Wakefield's "continuous and unmitigated performance failures" ignore: 1) Wakefield's 2014 "meets expectations" evaluation; 2) Wakefield's January 2015, 2% merit raise; 3) An August 9, 2015 email from Failing saying "good job"; and 4) Wakefield's September 2015 10% raise. This is not to mention that the only customer complaint referenced in Sodexo's entire motion for summary judgment is the February 19, 2016, email that was not directed to Wakefield, did not mention Wakefield, nor was Wakefield even copied on the email. Sodexo did not bring the email to Wakefield's attention, nor did Sodexo cite the email as a reason for Wakefield's February 23, 2016,

termination.

Sodexo asserts:

> "As discussed in Section II, below, the § 1981 retaliatory termination claim also fails for lack of evidence of pretext, especially given the undisputed fact that the plaintiff was well down the path to termination—having already received three largely unsatisfactory annual evaluations and four written disciplinary counseling letters—long before he ever complained of race discrimination (in regard to the rate of his starting pay two years earlier) to the EEOC in October 2015."

(DKT #27, p. 3). This assertion is false because it was in April 2015 when Wakefield first learned he was making $10,000 less than his similarly situated counterpart Humphrey, which prompted Wakefield to complain to Failing. Prior to Wakefield complaining to Failing that he was making less than Humphrey, he had just received his 2014 meets expectations evaluation from Benda. And in January 2015 Wakefield received a 2% merit raise. Therefore, according to Sodexo's own records, Wakefield was <u>not</u> having any job performance issues. Significantly, unlike Wakefield, Humphrey did not receive a merit raise in January 2015. Merit raises are automatic if you get a "meets expectations" evaluation.

Sodexo's willingness to repeatedly make false statements in its motion for summary judgment reveals just how baseless it is. Sodexo concedes that Wakefield has stated a prima facie case of race discrimination, and does not seriously challenge Wakefield's prima facie case of retaliation. Instead Sodexo asserts the familiar "but for" causation requirement. However, Sodexo fails to mention that the Tenth Circuit has held that a causal connection between the protected activity and adverse action may be shown by temporal proximity if the protected activity and the adverse action is very closely situated in time to give raise to

the inference of causation. The evidence in this case shows: 1) that Wakefield submitted an informal complaint on February 22, 2016, the day before he was terminated on February 23, 2016; 2) that Wakefield filed a Charge of Discrimination with the EEOC on February 17, 2016, six days before he was terminated; 3) that the EEOC notified Sodexo on February 10, 2016, that Wakefield had filed an unperfected charge, which was thirteen days before he was terminated; and 4) that Kevin Benda, Joseph Heeb, Chuck Thomas, and Lisa Failing were all on notice that Wakefield not only repeatedly, formally and informally, complained about discrimination based on race, but these individuals contrived progressive discipline all designed to dissemble and cover up a discriminatory purpose, that is to discriminatorily and retaliatorily terminate Wakefield.

The undisputed fact is that Wakefield can establish a prima facie case of both race discrimination and retaliation. Wakefield can also establish pretext through a multiplicity of grounds authorized by Tenth Circuit precedent, ranging from falsity to prior treatment of a plaintiff, to inconsistency and differential treatment.

## RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. **Not contested.**

2. **Contested.** Wakefield was initially hired by Sodexo on July 15, 2007 as a ES/CUS Mgr 1. In January 2009 Wakefield received a 3.5% merit raise. In January 2010 Wakefield received a 2.8% merit raise. In July 2010 Wakefield was promoted to ES/CUS Mgr II, and received a 5% merit raise. In January 2011 Wakefield received a 3% merit raise. In March 2012 Wakefield was laid off from his position at Langston. Six months later in October 2012 Wakefield was hired as a ES/CUS Mgr II at Norman Public Schools.

5

In January 2015 Wakefield received a 2% merit raise. (Ex. 5). Kevin Benda, not Wakefield, was the top ranking manager over the Norman East Zone. Benda was Wakefield's immediate supervisor as well as Humphrey's immediate supervisor. Wakefield was ES/CUS II over the night shift for the Norman East Zone. Benda was responsible for supplying the equipment, preparing equipment, repairing equipment (which rarely occurred), providing staff (which was never fully staffed). Benda failed miserably, so he blamed his supervisee, Wakefield, for his failures. (Ex. 3).

3. **Contested.** Wakefield was <u>not</u> the top manager responsible for supervising Sodexo's custodial and housekeeping staff in the East Zone. Kevin Benda was the top manager. Wakefield did not receive a steady stream of discipline. Wakefield's 2014 evaluation was meets expectations. (Ex. 2). In January 2015 Wakefield received a 2% merit raise (Ex. 5), and in September 2015 Wakefield received a 10% raise. Any discipline Wakefield received in 2013 from general manager Mike Majors was preempted by Wakefield's 2014 meets expectations evaluation and his January 2015 2% merit raise. In addition, Sodexo terminated Mike Majors (Ex. 47, Benda pp. 13 & 14), and he was replaced by Kevin Benda who did Wakefield's 2014 evaluations and rated him overall "meets expectations." (Ex. 2).

4. **Contested.** The two incompetent general managers Wakefield referred to were Mike Major (Ex. 47, Benda pp. 13 & 14) and John Petro (Ex. 47, Benda pp. 12 & 13), both of whom Sodexo replaced. (DKT # 27-5, p. 11.)

5. **Contested.** The February 10, 2014, counseling letter from general manager Kevin Benda (DKT # 27-6) is meaningless because in October 2014, Wakefield received

an overall "meets expectations" evaluation by Benda. (Ex. 2).

6.      **Contested.** The October 6, 2014, Constructive Counseling Notice and Action Plan (Ex. 1) was successfully completed (Ex. 47, Benda pp. 23-24) and subsumed by the overall "meets expectations" evaluation Benda gave Wakefield in October 2014 (Ex. 2) as well as the 2% merit raise Wakefield received in January 2015. (Ex. 5).

7.      **Contested.** Here, Sodexo combined comments made by Benda from separate areas of Wakefield's 2014 evaluation in order to make them appear as significant and less vague and highly subjective, For example, Benda admits that his comment that he would like to see more effort in sense of urgency and work to achieve results while working through obstacles was subjective (Ex. 2, Ex. 47, Benda p. 38).

8.      **Contested.** Sr. National Support Manager, School Services, Facilities Patricia O'Hara's March 2, 2015, Client Visit Report showed the staffing levels for Norman Public Schools was 124 custodial positions with 18 full time positions and 14 part time positions open. O'Hara stated, "Norman has an exceedingly high number of OPEN positions which is negatively affecting both quality and employee morale." (Ex. 3). O'Hara reviewed the QA inspections and "found Charles [Wakefield's] scores were consistently higher than Blake's [Humphrey] scores. O'Hara further found that "because of the staffing challenges, many areas are receiving only priority daily cleaning such as trash removal, restroom cleaning and cleaning highly visible areas such as main entrance." (Ex. 3). O'Hara stated "Kevin takes responsibility for the Day custodians," and "Charles is routinely conducting QAs in the schools . . . ." (Ex. 3). On March 22, 2015, Benda sent an email to Wakefield advising him that he would not give him a copy of O'Hara's report.

This is because her report was more critical of Benda and Humphrey than it was of Wakefield. (Ex. 3).

## Wakefield's Protected Activity

<u>April 2015</u>- Wakefield contacted Failing to complain that his salary was significantly lower than Humphrey's in a follow up email on June 8, 2018. (Ex. 7).

<u>May 27, 2015</u>- Failing sent Benda an email stating, "he is underpaid against his peers in like positions." (Ex. 6).

<u>June 8, 2015</u>- Wakefield to Failing:

Hi Lisa,

> This e-mail is a follow up on the above subject we had in early April of this year. You indicated you would do some research on the subject in regard to my present salary. Will you please provide me with information on the status of the subject matter. If you have any questions, please contact me.

(Ex. 7).

<u>June 9, 2015</u>- Email Failing to Wakefield:

> Hi Charles, I have spoken to your district manager Joe Heeb about this and am waiting to catch up with Kevin also. I have not forgotten about my commitment to you.

(Ex. 7).

Significantly, unknown to Wakefield, Failing had already sent Benda an email advising him that Wakefield was under paid against peers in his positions. (Ex. 6). There is no evidence in the record that Wakefield was ever told that Failing had found that he was being underpaid.

<u>July 21, 2015</u>- Wakefield sent an email to Failing asserting how he learned of the $10,000 discrepancy in pay between himself and Humphrey. He stated that it was unfair, and that

an adjustment should be made in order to be fair. (Ex. 7).

<u>July 22, 2015</u>- Failing responded to Wakefield stating:

> Thank you for your email Charles. And the information you provided. The company is currently and has been under a wage freeze for the past several months, so no out of cycle wage adjustments can be approved. This has been dictated by our President, Lorna Donatone to all employees. I am sorry that I did not communicate that to you.
> (Ex. 7).

<u>July 27, 2015</u>- Email from Failing to Benda and Heeb:

> $2518 would be a recommendation to increase salary ONLY if he is now performing at or above expectations on a daily basis.

(Ex. 5).

<u>August 9, 2015</u>- Failing sent Wakefield an email, stating in part:

> Hi Charles, thank you for the information but it's not quite that easy as you have stated below. There are many variables that come into play with where someone's salary is in Sodexo. And there is NO workaround for out of cycle pay increases thru August. This is a directive from our President Lorna Donatone.
>  . . .
>  . . . I know it's been a challenging summer with working around district projects and heard <u>you have done a good job.</u> Thanks for your dedication to the clients & students at Norman

(Ex. 7) (emphasis added).

This statement is false because on August 7, 2015, Wakefield was instructed to award pay raises to employees under his supervision. (Ex. 8).

### The Retaliation Against Wakefield Starts

<u>August 13, 2015</u>- Wakefield sent Failing an email, stating in part:

> To clarify, you are telling me that there is nothing that you can do to correct this? Or is there nothing that can happen before the end of August? In all honesty, my frustration from a lack of resolve continues to grow and while I know you did not forget about me, I can't see that any progress has been made regarding this concern.

9

(Ex. 7).

Failing never responded to this email, nor did she send any further emails to Wakefield.

August 13, 2015- The above email was forwarded to Benda and Heeb stating: "We need to put this to rest sooner than later. No matter what I tell him he does not agree so far. Your thoughts?" (Ex. 7)

August 17, 2015- Wakefield was instructed by Benda to give frontline employees in his zone a pay raise, effective August 7, 2015. (Ex. 46, No. 17).

**After Wakefield's Protected Activity Benda's Retaliation Starts**

September 3, 2015- Email from Benda to Heeb: "Getting a little frustrated with Charles' lack of urgency" (Ex. 10).

9. **Contested.**

September 16, 2015- Wakefield was told on September 16, 2015, he would be receiving a 10% pay raise. (Ex. 46, No. 19; Ex. 47 Benda pp. 95-97). During the same meeting Wakefield was presented with a Constructive Counseling Letter with Action Plan. (Ex. 11; Ex. 46, No. 18). Benda did not find it inconsistent or contradictory to give Wakefield a 10% pay raise and a Constructive Counseling letter with Action Plan on the same day. (Ex. 47, Benda pp. 95-98).

September 21, 2015- Failing sent an email stating that Wakefield's pay raise was approved by Joe Heeb and Chuck Thomas for internal equity of pay for Wakefield against his peers in the district and region. (Ex. 12).

September 21, 2015- Wakefield declined to accept the pay raise. (Ex. 13).

September 24, 2015- Wakefield filed an unperfected Charge of Discrimination with the EEOC. (Ex. 14; Ex. 46, No. 21).

### The Decision to Terminate Plaintiff is Made

September 28, 2015- Four days after Sodexo received notice that Wakefield had filed a Charge of Discrimination (Ex 14), Chuck Thomas sent an email to Lisa Failing stating: "Ok. Do we need to run this by legal? I am going to hold Kevin and Joe accountable for Charles's performance. Most likely this will result in his termination. I can almost guarantee he will sue us. I just want to make sure were [sic] prepared." (emphasis added) (Ex. 16).

September 30, 2015- Wakefield received an email from SR HR Support Specialist, Trina Anzalone, regarding his 10% raise. She stated, "Attached is the salary adjustment that I've been informed you are required to accept, per the legal department." (Ex. 16).

September 30, 2015- Wakefield sent Failing an email explaining why he was declining the 10% salary increase. He stated, "I am declining the offer, which is still well below the salary of my counterpart who has a less amount of time with Sodexo than I and many years of less experience." (Ex. 17).

October 1, 2015 at 7:37 a.m.- Anzalone sent another email to Wakefield stating, "Please sign and return to me, as this salary change is per the legal department and Lisa Failing's request." (Ex. 16).

October 2, 2015 at 3:45 p.m.- Wakefield sent Failing an email asking, "Can you please tell me why you insist on giving me a 10 per cent [sic] increase when it is a lot less than I want to except [sic] and a lot less than my peer working in the same unit, with the same title,

less experience, and less time with Sodexo?" (Ex. 18).

      10.    **Contested.**

October 16, 2015- Benda sent an email to Chuck Thomas, Lisa Failing, and Joe Heeb

regarding Wakefield's 2015 evaluation. The email stated:

> All,
> After speaking to Chuck, it was decided that a discussion between us was
> needed to develop a plan to roll out the annual review of Charles, in light of
> his EEO allegation. Attached you will find his review, and please let me
> know of any changes needed. Also………..we need to set up a call to discuss
> prior to implementation of this, and next year's goals and expectations.

(Ex. 19). A short time later Chuck Thomas made comments about what should be included

in Wakefield's 2015 evaluation, including: "I would also tell Charles that if he wants a

higher rating in future, the comments he puts in the evaluation must support that rating. Joe

– You will need to reopen step for Kevin to make changes." (Ex 19).

      Benda testified that Sodexo officials had never previously instructed him on what

to put in Humphrey's evaluation. (Ex. 19; Ex. 47, Benda pp. 115-117). Significantly, Lisa

Failing responded, "Please don't say this OK, we can work on a better way to discuss how

he self evaluates." (Ex. 19).

October 21, 2015- email from Failing to Benda, Heeb, and Thomas: "Move forward today

with eval stay focused on his role and performance good luck don't say anything that could

be perceived as retaliation." (Ex. 23; Ex. 47, Benda pp. 121).

October 21, 2015- Wakefield filed a perfected Charge of Discrimination with the EEOC.

(Ex. 24).

October 30, 2015- Benda electronically signed Wakefield's evaluation which rated

Wakefield overall "to be improved." (Ex. 25). The evaluation downgraded Wakefield in several categories, where he received a "meets expectations" the previous year. (Ex. 2).

November 4, 2015- Kim Hansen sent an email advising that "Sodexo has been served with an EEO charge filed by Mr. Wakefield." (Ex. 26). Benda testified that he did recall that he received Hansen's email. (Ex. 47, Benda pp. 130-131).

December 14, 2015- Benda sent an email which stated: "I would like to move forward with termination for Charles, as his actions towards operational excellence has not improved since this action plan was initiated on 9/16/2015." (Ex. 27; Ex. 47, Benda 132).

December 16, 2015 at 11:44 a.m.- Email from Heeb to Failing and others discussing "moving ahead with termination of Charles Wakefield from Norman." (Ex. 28; Ex. 47, Benda p. 134).

December 16, 2015 at 1:47 p.m.- Email from Failing to Heeb and others discussing "We still have the open EEOC claim with Charles, what is the further documentation you have on performance." (Ex. 28).

January 11, 2016- Email from Heeb to Failing, "I believe we need to remove Charles . . ." (Ex. 28; Ex. 47, Benda p. 135).

January 13, 2016- Heeb sent an email to Benda showing changes he had make to Section 3 and 4 of Wakefield's written warning. (Ex. 32). Benda testified that Heeb had not previously suggested changes to a final written warning. (Ex. 47, Benda pp. 140-141).

January 19, 2016- Benda issued a Constructive Counseling Notice- Written Warning to Wakefield. (Ex. 33, Ex. 47, Benda p. 144).

On or about February 10, 2016- Sodexo received Wakefield's Notice of Charge of

13

Discrimination from the EEOC (Ex. 36).

February 11, 2016- Heeb sent an email stating:

> Charles has been given his final written warning in Jan and the next step, if approved with you all, would be termination which I believe is justified by what Kevin has shared with me on his lack of performance.
> This is a preemptive email to ensure that we all are on the same page with our next step for termination - especially with the EEO.

Shortly thereafter Failing sent an email stating:

> I was just thinking about Charles yesterday.
> I have contacted the attorney for the EEO case and see where that is, then once I have that info. I will run it by our legal dept. to assess risk with his termination.
> I am not fearing too much risk as his performance is WELL documented at this point.

(Ex. 29).

February 12, 2016- Failing sent an mail stating: "Was told EEOC case could go on for months from attorney supporting the case. I will set up a call with legal to run it by them on termination of employment risk." (Ex. 47, Benda pp. 148-149).

February 17, 2016- Failing sent out an email stating:

> I have not connected yet with one of our attorneys, but am comfortable that we have done our due diligence with Charles.
> Write up his termination form ok? I will clear it by Friday when I can get back to the office. We will target Monday to term, then you can post position thereafter with Delia.

(Ex. 41).

      12.  **Contested.**

February 17, 2016- Wakefield's perfected his Charge of Discrimination with the EEOC.

(Ex. 40). Benda testified that as of February 17, 2016, he was aware that Wakefield had an

ongoing EEOC Complaint (Ex. 47, Benda p. 152).

13.    **Contested.** On February 19, 2016 email not directed toward Wakefield. (Exhibit 42).

Benda testified that the February 17, 2016, email from NNHS principal, Liesenfeld which was directed to Benda criticized the cleanliness of the school. The email was not sent to Wakefield, Wakefield was not copied on the email, and Benda could not recall if he forwarded the email to Wakefield or discussed it with him. (Ex.47, Benda pp. 154-155).

Wakefield inspected NNHS the night before, on February 18, 2016. He wrote that "North is fully staffed tonight. Gym floor and bleachers are clean for the game." (Ex. 47, Benda pp. 155-159).

February 19, 2016- Norman North principal, Peter Liesenfeld sent an email to Benda. In this email Wakefield is <u>not</u> mentioned. Neither is Wakefield's staff. However, the list of negatives is directed entirely to Benda. (Ex. 42). Sodexo's motion for summary judgment uses this email to falsely blame Wakefield for Benda's failures. (DKT # 27, p. 15-16)

14.    **Contested.**

February 22, 2016- Wakefield submitted his response to the January 19, 2016, Constructive Counseling Notice- Written Warning. (Ex. 44; Ex. 47, Benda pp. 162-166).

February 23, 2016- Wakefield was terminated. (Ex. 45; Ex. 47, Benda pp. 166).

15.    **Contested.**

February 29, 2016 and March 1, 2016- Wakefield received thanks from the schools. The principal at Reagan Elementary thanked Wakefield for quickly responding to custodial request. (Ex. 48). Kelly Otis, principal of Reagan Elementary wrote an email thanking

Wakefield for always addressing any issue or concern. (Ex. 48).

16.     **Contested.** Chuck Thomas said he gave Wakefield the 10% raise. (Ex. 18). Sodexo tried to coerce Wakefield into accepting the raise citing the legal department and Failing's request. (Ex. 18).

17.     **Contested.** There was no need for Wakefield to mention or complain about racial discrimination. Wakefield expressly mentioned that he is black and Humphrey is white. (Exs. 24 & 45).

18.     **Contested.** Benda did not solely decide to terminate Wakefield. (10/21/15 email "perceived as retaliation" (Ex. 23; Ex. 29; Ex. 47, Benda pp. 166-168).

19. and 20.    **Contested.** This statement is completely meaningless because Wakefield filed his lawsuit pursuant to 42 U.S.C. § 1981.

21.     **Contested.** This statement is completely meaningless because Wakefield is not a lawyer, but most importantly, Wakefield was unaware of all of the nefarious activities by Sodexo, including the determination to terminate him as early as September 28, 2015. (Ex. 9).

22.     **Contested.** Again, Wakefield is not a lawyer. The evidence of this case, however, is overwhelming that Wakefield's termination was motivated by discriminatory and retaliatory animus as established by circumstantial evidence.

23.     **Contested.** Wakefield was terminated the day after he submitted his statement which constituted protected activity.  (Ex. 44; Ex. 47, Benda p. 163). Wakefield was terminated six days after he filed his EEOC complaint. (Ex. 40). Wakefield was terminated ten days after the EEOC notified Sodexo that he had filed an unperfected

Charge of Discrimination. (Ex. 36). Sodexo decided to terminate Wakefield on December 16, 2015 (Ex. 28), but it contrived to further discipline Wakefield to, as Wakefield put it, "This is follow up on a paper trail leading to termination!" (Exs. 16, 27, 28, 29, 30, 31).

## STANDARD FOR SUMMARY JUDGMENT

The Tenth Circuit "repeatedly has emphasized that we must draw all inferences in favor of the party opposing summary judgment[,][and] in this respect, we must view the evidence in context, not simply in its segmented parts." *Maldonado v. City of Altus,* 433 F.3d 1294, 1302 (10th Cir. 2006) (*quoting O'Shea v. Yellow Tech. Servs, Inc.,* 185 F.3d 1093, 1096 (10th Cir. 1999), (alterations by the Court). If there is any dispute as to the material facts or the inferences from those facts, then summary judgment must be denied.

> It is not the purpose of a motion for summary judgment to force the judge to conduct a "mini-trial" to determine the defendant's true state of mind. So long as the plaintiff has presented evidence of pretext (by demonstrating that the defendant's proffered non-discriminatory reason is unworthy of belief) upon which a jury could infer discriminatory motive, the case should go to trial. Judgments about intent are best left for trial and are within the province of the jury.

*Plotke v. White,* 405 F.3d 1092, 1093-94 & 1103 (10th Cir. 2005) *quoting Randle v. City of Aurora,* 69 F.3d 441, 453 (10th Cir. 1995).

Further, adding to defendant's burden is the rule that, "[i]n our circuit, the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment." *Trainor v. Apollo Metal Specialties, Inc.,* 318 F.3d 976, 979 (10th Cir. 2002).

**ARGUMENT**

## I. THE ELEMENTS OF A PRIMA FACIE CARE ARE THE SAME WHETHER THE CASE IS BROUGHT UNDER § 1981 OR TITLE VII

Sodexo's assertion that Wakefield did not file his lawsuit pursuant to Title VII is contradicted by its admission that the elements of a prima facie case are the same whether the case is brought under § 1981 or Title VII. Therefore, Sodexo's assertions regarding § 1981 and Title VII are absolutely meaningless to the analysis of Wakefield's claims because § 1981 and Title VII are construed as the same.

### Plaintiff Can Proceed to Trial by Stating a Prima Facie Case

Next Sodexo asserts that Wakefield may only proceed to trial by creating a triable issue of fact that he was wrongfully terminated based on his race and his participation in protected activity, and that Wakefield cannot show either. However, what Sodexo neglects to mention is that Wakefield can proceed to trial by stating a prima facie case, which Sodexo essentially concedes that he has done on both claims, and showing that Sodexo's nondiscriminatory retaliatory reasons are pretextual.

## II. SODEXO CONCEDES THAT WAKEFIELD HAS STATED A PRIMA FACIE CASE OF § 1981 RACE DISCRIMINATION

Page 17 of Sodexo's motion for summary judgment states: "Given the low threshold-showing required to establish a prima facie case under § 1981, Sodexo does not dispute the prima facie case for the purposes of this motion."

### Legitimate Nondiscriminatory Reasons

If, as here, the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse

employment action." *EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1191 (10th Cir. 2000). "The defendant's burden at this state is one of production, not one of persuasion." *Id.* In this case, Sodexo claims Wakefield was terminated for poor job performance and that Sodexo acted in good faith when terminating Wakefield. However, the record of this case reveals Sodexo did not act in good faith, but instead was dishonest toward Wakefield to cover up a discriminatory purpose. This case is one of those appropriate circumstances where a trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000).

### III. PLAINTIFF'S 42 U.S.C. § 1981 RETALIATION CLAIM

Section 1981 "prohibits not only racial discrimination but also retaliation against those who oppose it." *Parker Excavating, Inc. v. Lafarge W., Inc.,* 863 F.3d 1213, 1220 (10th Cir. 2017) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 355 (2013)). "When courts consider § 1981 retaliation claims, the principles set forth in Title VII retaliation cases apply with equal force." *Id.* (internal quotation marks omitted). Accordingly, absent direct evidence of retaliation, a plaintiff's § 1981 retaliation claim is evaluated under a *McDonnell Douglas* burden-shifting framework. *Id.* To establish a prima facie case of retaliation under § 1981, a plaintiff must show that "(1) he engaged in opposition to racial discrimination that is protected under the statute; (2) a reasonable person would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the adverse action." *Parker, Id.* at 1220.

19

Here, Sodexo only seems to challenge the third element by asserting that: "The plaintiff cannot establish . . . that his complaints were the "but for" cause of his termination." (DKT # 27, p. 22.) The burden of establishing a prima facie case of discrimination or retaliation is not onerous. *Tex. Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981)("The burden of establishing a prima facie case of disparate treatment is not onerous."); *Marquez v. Baker Process, Inc.,* 42 F.App'x 272, 276 (10th Cir. 2002) (stating a plaintiff's burden to demonstrate a prima facie case for a claim of retaliation is no more so than in the context of disparate treatment.) The Supreme Court has clarified that a Title VII plaintiff asserting a claim of retaliation must show that his protected activity was the "but for" cause of the alleged adverse employment action. *Univ. of Tex. S.W. Med Center v. Nassar,* 133 S.Ct. 2517, 2534 (2013).

Courts may infer a causal connection "[i]f the protected conduct is closely followed by the adverse action." *Ward v. Jewell,* 772 F.3d 1199, 1203 (10th Cir. 2014). "We have held that one and one-half month period between protected activity and adverse action may, by itself, establish causation [, but] a three-month period, standing alone, is insufficient to establish causation." *Foster v. Mountain Coal Co.,* 830 F.3d 1178, 1186 (10th Cir. 2016)(bracket and internal quotation marks omitted).

Sodexo asserts, "The internal complaint the plaintiff—made about his salary nearly a year before his termination—does not constitute protected activity because the plaintiff never alleged in his internal complaint that his pay was lower ***due to his race***. Indeed, the Plaintiff never mentioned race at all in this complaint. (Facts 16–17)." (DKT # 27, p. 22) (emphasis in original). Contrary to this baseless assertion, Wakefield complained

20

repeatedly starting in April 2015. On June 8, 2015, Wakefield sent an email stating, "This email is a follow up on the above subject we had in early April of this year." In subsequent email exchanges between Wakefield and Lisa Failing he expressly mentions Blayke Humphrey and he indicates that Humphrey earns over $10,000 more than him. Wakefield is not required to complain that his lower pay was due to his race, nor is he required to even mention race. The Tenth Circuit has held, "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful . . . ." *Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008). A plaintiff need only show that when he engaged in protected opposition, he had a reasonable good-faith belief that the opposed behavior was discriminatory. *Hertz v. Luzenac America, Inc.,* 370 F.3d 1014, 1016 (10th Cir. 2004). Significantly, Lisa Failing, after conducting an analysis, informed Kevin Benda on May 27, 2015 that Wakefield was underpaid against his peers in like positions. (Ex. 6). And on September 15, 2016, Benda informed Wakefield that he would be getting a 10% raise. (Ex 47, Benda, p. 95).  Chuck Thomas and Joe Heeb approved the raise for internal equity of pay for Wakefield against his peer in the district and region. (Ex. 12). Sodexo's acknowledgment that Wakefield was underpaid and subsequently giving him a 10% raise confirms that Wakefield had a reasonable good-faith belief that the opposed action was discriminatory.

Sodexo argues proximity should be measured on the plaintiff's first EEOC complaint, which was filed four months prior to his termination (DKT # 23). However, the Tenth Circuit has held that proximity is measured based on the employee's last instance of

protected activity. *EEOC v. PVNF, LLC.,* 487 F.3d 790, 804 (10th Cir. 2007) ("the challenged actions were within a month of [the plaintiff's] last instance of protected activity. We have previously held that such temporal proximity, alone, is sufficient to allow an inference of the existence of a causal connection between the two events.") *See also Proctor v. United Parcel Svcs.,* 502 F.3d 1200, 1208 (10th Cir. 2007) (proximity based on the date of the "last administrative charge"). As applied to the instant case, Wakefield's last instance of protected activity occurred on February 22, 2016, the day before he was terminated on February 23, 2016. On February 22, 2016, Wakefield submitted additional comments to the Constructive Counseling Notice. The documents constitutes protected activity because in it he states:

> When I was presented the Action Plan on 9/15/2015 I replied to the GM and DM, "this is the beginning of a paper leading to termination because prior to receiving the Action Plan, I was told I was going to receive a 10% raise." Receiving a 10% raise and an Action Plan in the same meeting appears to be contradictory and confusing.

(Ex. 44). The Tenth Circuit has held that protected opposition can range from filing formal charges to voicing informal complaints to superiors. *Hansen v. Skywest Airlines,* 844 F.3d 914, 926 (10th Cir. 2016). The Supreme Court has defined "oppose" in this context by looking to its ordinary meaning: "to resist or antagonize; to contend against; to confront; resist; withstand, . . . to be hostile or adverse to, as in opinion." *Id.* at 925 & 926. Clearly, pursuant to the Supreme Court's definition of oppose, Wakefield's February 22, 2016 additional comments to his Constructive Counseling Notice constituted informal protected activity.

Wakefield filed his last formal Charge of Discrimination with the EEOC on

February 17, 2016, which was six days prior to his February 23, 2016, termination. (Ex. 40). On February 10, 2016, Sodexo was sent a notice from the EEOC advising that "The Commission has received an unperfected charge. The Commission is working to perfect the writing of this charge. Upon completion, as regulations allow, we will mail you a copy of the charge." (Ex. 36) This was 13 days prior to Wakefield's February 23, 2016, termination. All of the above referenced instances of protected activity occurred within two week prior to Wakefield's termination. The Tenth Circuit has held that a one and one-half month period between protected activity and adverse action *may, by itself, establish causation. Conroy v. Vilsack,* 707 F.3d 1163, 1181-82 (10th Cir. 2013) (emphasis added).

Sodexo claims in a footnote that Kevin Benda was not aware of the second EEOC charge on February 17, 2016. (DKT # 23, p. 22.) Benda was well aware of the informal complaint Wakefield submitted directly to him on February 22, 2016, the day before Wakefield's termination. (Ex. 47, Benda p. 163). Benda was also well aware that Wakefield was underpaid compared to his peers in like positions. *See* Failing's May 27, 2015, email to Benda (Ex. 6). Benda was well aware that Failing recommended a $2,518 salary increase for Plaintiff. *See* Failing's July 27, 2015, email to Benda. Benda was well aware that Failing, on August 9, 2015, informed Wakefield she heard he was doing a good job. *See* Failing's August 9, 2015, email to Wakefield- Benda was copied.  (Ex. 7). Benda received Wakefield's response declining the offered 10% salary increase because it was still well below the salary of Wakefield's counterpart. (*See* September 20, 2015, email to Benda, Ex. 17.) Benda was aware that on October 21, 2015, Wakefield filed a Charge of Discrimination with the EEOC. (Ex. 24; Ex. 47, Benda p. 105). Benda was aware that on

23

January 11, 2016, Sodexo had given the authorization to terminate Wakefield. (Ex. 28). But rather than terminate Wakefield, Benda, on January 19, 2016, gave Wakefield a written warning. Wakefield has shown that Kevin Benda, Lisa Failing, Joe Heeb, and Chuck Thomas were all aware of this discrimination complaints when deciding to terminate him. *See Zokari v. Gates,* 561 F.3d 1076, 1081 (10th Cir. 2009) (stating a plaintiff must show that "individuals who took adverse action against him knew of his protected opposition.") Now, Sodexo wants this Court to believe that Benda was was unaware of Wakefield's last EEOC charge that Sodexo received notification of on February 10, 2016 (W 3560), and received on February 17, 2016. (Ex. 40). A jury could reasonably infer from the falsity of this explanation that the employer is dissembling to cover up a discriminatory purpose. *Reeves v. Sanderson Pumbing Products, Inc.,* 530 U.S. 133, 147 (2000). Frankly, this Court need not consider whether Benda knew of Wakefield's February 2016 EEOC formal complaint of discrimination because a reasonable jury could reject Sodexo's underlying premise that Benda alone decided to terminate Wakefield. (Ex. 47, Benda pp. 166-168). *See Zisumbo v. Ogden Regional Medical Center,* 801 F.3d 1185, 1200 (10th Cir 2015) (drawing all reasonable inferences in plaintiff's favor, a reasonable jury could have found that the decision maker knew of plaintiff's complaints of race discrimination).

It is clear from the evidence that Lisa Failing's analysis of Wakefield's salary, which revealed that he was under paid, quickly morphed into an effort to raise his pay only if he was performing at or above expectations on a daily basis. (Ex. 5).

Finally, apparently out of frustration with Wakefield's refusal to accept the discrimination being visited upon him relative to his pay, Lisa Failing, on August 13, 2015,

sent Kevin Benda and Joseph Heeb an email stating, "we need to put this to rest sooner than later. No matter what I tell him he does not agree so far. Your thoughts?" (S1283). Less than three weeks later, on September 3, 2015, Benda sent Heeb an email stating "Getting a little frustrated with Charles' lack of urgency." (Ex. 10). Thereby starting the paper trail leading to Wakefield's eventual termination.

Sodexo asserts: "The plaintiff's sub-par performance reviews and corrective disciplinary action began early in his employment with Sodexo, long before the plaintiff engaged in any protected activity. (Facts 3-10). The plaintiff's long history of poor job performance negates any inference of retaliatory motive." (DKT # 27, pp. 23 & 24). Here Sodexo knowing fails to mention 1) that in October 2014, Kevin Benda gave Wakefield an overall "meets expectations" evaluation; 2) that nowhere in Sodexo's motion for summary judgment does it even mention that in January 2015 Wakefield received a 2% merit raise; 3) that Sodexo also fails to advise the Court that in an email to Wakefield dated August 9, 2015, Lisa Failing informed him that she had heard he was doing a good job; or 4) that in September 2015, Sodexo gave Wakefield a 10% pay raise. These four undisputed facts not only destroy Sodexo's argument that Wakefield's sub-par performance began long before Wakefield engaged in any protected activity. These facts eviscerates Sodexo's baseless and false assertion that Wakefield was terminated for poor job performance. Instead, this evidence shows that Sodexo's proffered reason for termination was obviously contrived and designed to dissemble and cover up a discriminatory purpose.

As the Supreme Court has explained, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is

dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097.

## IV. WAKEFIELD HAS PROVIDED AMPLE EVIDENCE TO ESTABLISH PRETEXT

### Sodexo's stated reason for Wakefield's termination is false.

The U.S. Supreme Court, in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000), explained that pretext can be inferred from the falsity of the employer's explanation for taking an adverse action. *See Thomas v. Berry Plastics Corp.,* 803 F.3d 510, 515 (10thCir. 2015). As applied to this case, prior to Wakefield's protected activity, he enjoyed a relatively clean job performance record. In 2014, Wakefield's supervisor, Kevin Benda, had place him on a Constructive Counseling Notice and Action Plan (Ex. 1). However, Kevin Benda testified under oath that Wakefield successfully completed the Action Plan, and it ended October 31, 2014. (Ex. 47, Benda p. 23). On December 26, 2014, Wakefield signed his FY 14 Annual Evaluation where in Benda rated him overall "meets expectations." (Ex. 2; Ex. 49, Benda p. 27) In January 2015, Wakefield was awarded a 2% merit raise (Ex. 5), and on August 9, 2015, Sodexo's Human Resources Director, Lisa Failing, sent Wakefield and email advising that she had heard he was doing a good job. (Ex. 7).

However, after Wakefield continued to press the issue that he was paid $10,000 less

than his similarly situated counterpart, Lisa Failing turned against Wakefield. Failing sent an email to Kevin Benda stating, "We need to put this to rest sooner than later. No matter what I tell him he does not agree so far. Your thoughts?" (Ex. 7; Ex. 47, Benda pp. 75-76) Shortly thereafter Benda sent an email to Joseph Heeb stating, "Joe, Getting a little frustrated with Charles's lack of urgency." (Ex. 10). Suddenly the wheels to terminate Wakefield were set in motion. On September 16, 2015, 13 days after Benda's September 3, 2015 email, Wakefield was first told he was getting at 10% pay raise and during the same meeting Wakefield was given a Constructive Counseling letter with a three month Action Plan. Then just 12 days later, on September 28, 2015, Chuck Thomas sent Lisa failing an email stating:

> Ok. Do we need to run this by legal? I am going to hold Kevin and Joe accountable for Charles's performance. Most likely this will result in his termination. I can almost guarantee he will sue us.
> I just want to make sure were are prepared,

Note that Wakefield was not even two weeks into his three month Action Plan. Clearly the Action Plan was merely a subterfuge to create a paper trail upon which to falsely justify Plaintiff's termination. Sodexo cannot honestly and in good faith assert that Wakefield was terminated for poor job performance when it knew as early as September 28, 2015, that Wakefield would most likely be terminated.

<u>Sodexo treated Humphrey better than it treated Wakefield.</u>

Evidence that a similarly situated employee received better treatment can suggest that the employee's alleged nondiscriminatory reason is pretextual. *Roberts v. International Business Machines Corp.,* 733 F.3d 1306, 1310 (10th Cir. 2013). Humphrey

received better treatment than Wakefield in every aspect. Although they had the same job, same duties, and same supervisor (Ex. 47, Benda pp. 63 & 64), Humphrey was paid $10,000 more than Wakefield. (Ex. 47, Benda p. 63). Benda admitted in his deposition that he did not receive any guidance regarding what he should put in Humphrey's evaluation. (Ex. 47, Benda pp. 121). However, Chuck Thomas, Joe Heeb, and Lisa Failing injected themselves into the preparation of Wakefield's evaluation and the discipline Wakefield received. (Ex. 21, 22, 23, 30, 31, 32, 37, 38, 39, 41).

<u>Evidence of pretext may include prior treatment of Wakefield.</u>

"Evidence of pretext may include . . . prior treatment of plaintiff." *Metzler v. Fed. Home Loan Bank Topeka,* 464 F.3d 1164, 1174 (10th Cir. 2006). "Temporal proximity in addition to evidence that the employee's record was relatively clean prior to his protected activity, but suddenly drops after his protected activity, is sufficient to survive summary judgment." *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1218 (10th Cir. 2002). In this case, on October 6, 2014, Kevin Benda gave Wakefield a "meets expectations" evaluation for the time period of September 1, 2013 through August 31, 2014. (Ex. 2). Then in January 2015, Wakefield received a 2% merit raise. (Ex. 5). It was after that Wakefield discovered that Humphrey was being paid $10,000 more than him, despite the fact that they both had the same supervisor, held the same position, and were held to the same standards. The only difference between the two positions is that Humphrey was assigned to the West Zone and Wakefield was assigned to the East Zone. In April 2015, Wakefield contacted Lisa Failing, and later exchanged several emails with her, wherein he complained about the salary discrepancies between him and Humphrey. (Ex. 7).

Failing, on May 27, 2015, sent Benda an email advising him that her analysis of Wakefield's salary revealed that he was underpaid against his peers in like positions. (Ex. 6). The significance of Failings email to Benda reveals two things: 1) That Benda was placed on notice of Wakefield's protected activity; and 2) That Wakefield was the victim of race discrimination as evident by Humphrey receiving better treatment relative to his salary compared to Wakefield.

In an email to Wakefield from Failing dated August 9, 2015, she informed Wakefield that she had heard he had done a good job and she thanked him for his dedication to the clients and students of Norman. (Ex. 7). Wakefield's clean record suddenly to drops less than one month after his protected activity. On September 3, 2015, Benda sent an email to Heeb stating "Getting a little frustrated with Charles' lack of urgency." (Ex. 10). Then less than two weeks later Benda and Heeb placed Wakefield on an Action Plan. (Ex. 11; Ex. 46, No. 18). During the same meeting wherein Wakefield was placed on an Action Plan he was also told he would be getting a 10% raise. (Ex. 46, No. 19).

Pursuant to *Garrett*, Wakefield, who had a relatively clean record prior to his protected to activity and suddenly dropped after his protected activity, is sufficient to survive summary judgment. In *Garrett* the court said such inconsistencies and contradictions raised disputed issues of fact as to whether his evaluations and ranking were truly the reason for the supervisors' actions towards their employee. *Garrett*, 305 F.3d at 1219.

## CONCLUSION

For the above reason's Defendant's Motion for Summary Judgement should be denied in its entirety.

Respectfully submitted,
RIGGS, ABNEY, NEAL, TURPEN,
  ORBISON & LEWIS, P.C.

s/ Melvin C. Hall
Melvin C. Hall, OBA # 3728
528 NW 12th Street
Oklahoma City, OK 73103
(405) 843-9909—Office
(405) 842-2913—Fax
mhall@riggsabney.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2019, I filed the above document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

s/ Melvin C. Hall