## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHARLES A. WAKEFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  CIV-17-1006-R |
| | ) | |
| SODEXO USA, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT SODEXO OPERATIONS, LLC'S
## OMNIBUS MOTION *IN LIMINE*

/s/Jeremy Tubb
Jeremy Tubb, OBA #16739
Tiffany J. Wythe, OBA #21405
Matthew S. Panach, OBA #22262
FULLER TUBB & BICKFORD, PLLC
201 Robert S. Kerr, Ste. 1000
Oklahoma City, OK  73102-4216
Telephone: (405) 235-2575
Facsimile: (405) 232-8384
jeremy.tubb@fullertubb.com
tiffany.wythe@fullertubb.com
panach@fullertubb.com
*-Attorneys for Defendant Sodexo-*

Pursuant to Fed. R. Civ. P. 103(b), Defendant Sodexo Operations, LLC, improperly named as "Sodexo USA" ("Sodexo"), moves the Court for a definitive evidentiary ruling excluding the inadmissible evidence described more specifically in Part II below.

## I.    SCOPE OF MOTION.

Sodexo seeks an order prohibiting Plaintiff, as well as his attorneys, witnesses, and other representatives (collectively, "Plaintiff") from mentioning, admitting evidence regarding, or bringing before the jury in any manner, either directly or indirectly, any of the following matters set forth in Part II of this Motion.  The requested ruling is intended to preclude Plaintiff from bringing such matters before the jury in any form or fashion (whether by virtue of *voir dire*, questioning, witness testimony, documentary proof, demonstrative exhibits, statements of counsel, or otherwise).

## II.    INADMISSIBLE EVIDENCE TO BE EXCLUDED *IN LIMINE*.

### A.    <u>Evidence Regarding Sodexo's parent companies</u>.

As noted in Sodexo's Answer (Doc. 7) and in its Corporate Disclosure Statement (Doc. 8), the Plaintiff was employed by Sodexo Operations, LLC – not by "Sodexo USA."   *See also* (Ex. 1, *Redacted Version of Plaintiff's 2016 W-2 from Sodexo*, Wakefield 3893) (identifying Sodexo Operations, LLC as Plaintiff's employer).

Sodexo Operations, LLC is wholly owned by Sodexo, Inc. and Sodexo, Inc. is wholly owned by "Sodexo, S.A." Sodexo, S.A. is a *societe anonyme* organized under the laws of the Republic of France, which is listed on the Euronext Paris First Market.  Pierre

Bellon, along with members of his family, are the majority shareholders of Bellon, S.A., which is the controlling shareholder of SA.

Plaintiff has produced no evidence that he was employed by any of Sodexo Operations, LLC's parent companies.  And as noted on his tax returns, the evidence is to the contrary. Accordingly, there is no relevance to any evidence regarding such entities, and any reference to their relative size or the fact that Sodexo is ultimately owned by a foreign corporation runs the risk of unfairly prejudicing Sodexo and confusing the jury. Such evidence should be excluded pursuant to Fed. R. Evid. 401-03.

**B.**     **Evidence Regarding an Alleged Class Action Lawsuit Against Sodexo.**

During Plaintiff's deposition, he was asked to identify what facts he was relying upon to form the belief that his starting salary was lower because of his race. In response, Plaintiff referenced a supposed class action lawsuit against Sodexo, which Plaintiff claimed to have involved a similar issue (*i.e.*, allegations of pay disparity based on race). According to his testimony, Plaintiff did not participate in the class action because it involved a time period prior to the beginning of his employment.  (Ex. 2, *Pl. Dep.,* 185:21 – 187:1).

Any evidence or testimony regarding the alleged class action is inadmissible for several reasons.  First, Plaintiff has not identified the case in question. Second, the mere existence of a lawsuit involving similar issues does not make Plaintiff's allegations any more or less likely to be true.  Third, Plaintiff has no first-hand knowledge of the alleged case and relies instead on inadmissible (and inaccurate) hearsay. Fourth, Plaintiff has produced no documentation or other evidence in discovery to support this contention.

Fifth, even if such a case had existed, there is no evidence that the employees who would have been part of the alleged class were similar to Plaintiff or that the same decision-makers would have been involved.  In short, this evidence is not relevant, is unreliable and inadmissible hearsay, and further poses a substantial risk of unfair prejudice to Sodexo, confusing of the issues, and wasting of the jury's time.  Such evidence should be excluded pursuant to Fed. R. Evid 401-403, 801-802.

### C.     **Plaintiff's Salary "Research" from "GlassDoor.com".**

Plaintiff has produced a screenshot from a third-party website, GlassDoor.com. GlassDoor.com is a self-described job search website that also compiles (among other things) unverified and anonymous reports of salary information for various employers. (Ex. 3, GlassDoor Screenshot produced by Plaintiff, Wakefield 3485-3486).

On its website, GlassDoor.com warns users in its terms of service that it cannot and does not vouch for the accuracy of the salary information it compiles and makes available to users.  https://www.glassdoor.com/about/terms.htm.

The information Plaintiff obtained from GlassDoor is inadmissible hearsay and should not be admitted in any form or otherwise referenced by Plaintiff.  In addition to being inadmissible hearsay, this information is also of little if any relevance, since actual, verified salary data has been produced in this lawsuit.  In short, there is no need to rely on the unreliable and inadmissible information in the screenshot produced by Plaintiff. Moreover, doing so runs the risk of unfair prejudice to Sodexo and confusion of the issues.  Accordingly, this information should be excluded pursuant to Fed. R. Evid. 401-403, 801-802.

### D.  <u>Alleged Discriminatory Acts of Non-Decisionmaker Mike Majors</u>.

Plaintiff's only evidence of race discrimination relates to his starting pay.  As noted by Sodexo in its Reply in Support of Summary Judgment, Plaintiff ignores the fact that his starting salary was set by his former supervisor, Michael Majors – the same person who hired him. (Ex. 2, Pl. Dep., 35:11 – 37:1; 38:14-16; 65:16 – 66:11).   In contrast, the starting salary of Plaintiff's comparator (Blayke Humphrey) was set by Kevin Benda. *Id.* at 192:17-18.

While Plaintiff attributes a racial motive to his former supervisor (Mr. Majors), he cannot explain why. *Id.* at 192:8 – 193:13.  More importantly, it is undisputed that Mr. Majors has not worked for Sodexo since at least January of 2014 – well before the decision was made to terminate Plaintiff's employment. *See* (Doc. 31, p.6) (referencing deposition testimony of Kevin Benda, Doc. 31-47, at p. 13-14).

The only adverse action at issue in this case is Plaintiff's termination.  Since Mr. Majors was undisputedly not a part of that decision, Sodexo is hard-pressed to see any relevance to Mr. Majors having set Plaintiff's salary at a lower rate than Mr. Benda subsequently set for Blayke Humphrey.  In addition to being irrelevant, this evidence is likely to unfairly prejudice Sodexo, mislead the jury, and confuse the actual issues to be decided.  It should be excluded pursuant to Fed. R. Evid. 401-403.

### E.  <u>Alleged protected activity in which Plaintiff did not mention race</u>.

The parties have a fundamental dispute as to what is required for an internal complaint to constitute protected activity under Section 1981.  Plaintiff contends that any complaint in which he stated in form or in substance that he was being paid less than

Blayke Humphrey or paid less than his counterparts meets the threshold for protected activity.  But this is not correct:

> [O]pposition to an employer's conduct is protected [by Title VII's retaliation provision] only if it is opposition to a practice made an unlawful employment practice by Title VII. Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]. While the sufficiency of the employee's opposition is necessarily determined by the specific facts of the case, the Tenth Circuit has rejected the sufficiency of a complaint which contains no reference to the employee's race or other protected category.

*Asojo v. Bd. of Regents of Univ. of Okla.*, No. CIV-11-333-D, 2012 WL 3679539, at *8 (W.D. Okla. Aug. 24, 2012) (Emphasis added, internal citations and quotations omitted); *see also Shah v. Okla. Dep't of Mental Health*, No. CIV-10-1335-F, 2011 WL 13174646, at *7 (W.D. Okla. Oct. 31, 2011), *aff'd*, 485 F. App'x 971 (10th Cir. 2012).

When viewed against the applicable standard set forth above, Plaintiff's first protected activity did not occur until he filed an unperfected charge of discrimination with the EEOC on or about September 24, 2015.

Plaintiff should be precluded at trial from representing these prior internal complaints to be "protected activity."  On this issue, Sodexo is not seeking to have such communications excluded in their entirety as such communications are relevant to show the absence of retaliation. Plaintiff began complaining about the alleged pay disparity as early as late-2014, far before his termination in February of 2016.  Thus, while Plaintiff had been complaining about his salary since late-2014 it was not until late-September of 2015 that he attributed an unlawful motive to the disparity.  This issue is particularly important in light of Plaintiff's position that the decision to terminate his employment occurred on September 28, 2015 – just four days after his very first protected activity. As

noted in Sodexo's Reply in Support of its Motion for Summary Judgment, there is no evidence that any of Sodexo's decision-makers were aware of Plaintiff's protected activity as of September 28, 2015.  Plaintiff should be precluded from muddying the waters on this point by pointing to his earlier internal complaints which made no mention of race in an attempt to avoid this fact.

F.   **Improper comparator evidence regarding Blayke Humphrey and Raymond McMillon, as well as comparator evidence that post-dates Plaintiff's termination.**

1.   Blayke Humphrey is not a valid comparator with Plaintiff on the issue of starting salary.

Although Plaintiff does not have a claim for discriminatory pay, he relies on the disparity in starting salary between himself and Blayke Humphrey as evidence that his termination nearly four (4) years later was racially discriminatory.

However, Blayke Humphrey is not a relevant comparator to Plaintiff with respect to the issue of starting salary because: (1) Plaintiff's starting salary was undisputedly set by former employee Mike Majors; (2) Mr. Humphrey's starting salary was undisputed set by Kevin Benda; and (3) it is undisputed that Mike Majors played no role in Plaintiff's termination (and was, in fact, no longer employed by Sodexo when the termination decision was made).

The fact that Plaintiff's starting salary was set by a different supervisor is significant. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d, 1220, 1232 (10th Cir. 2000) (noting that an employee is only considered "similarly situated" if he "deals with the same supervisor"). While the Supreme Court has cautioned against the application of

a *per se* rule in analyzing similarly situated employees, it is clear that it remains the rare case where an employee's comparable treatment would be relevant if the complained-of conduct flowed from a different supervisor. *Compare Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388, 128 S. Ct. 1140, 1147, 170 L. Ed. 2d 1 (2008) (rejecting *per se* rule); *with Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017) (noting the importance of comparators having dealt with the same supervisor); *Frederick v. Metro. State Univ. of Denver Bd. of Tr*, 535 F. App'x 713, 720 (10th Cir. 2013) (same).

Moreover, in the present case the treatment of Mr. Humphrey is even more attenuated because it is not the employment action that is actually at issue in this case. Rather, Plaintiff is attempting to use Mr. Majors' allegedly discriminatory decision regarding his starting salary to provide evidence that his termination – which occurred many years later and was carried out by a different group of decision-makers – was discriminatory. As it relates to Plaintiff's termination – which is the only adverse action at issue in this case – there is no logical inference to be drawn from the disparity in his starting pay. Such evidence would only serve to confuse the jury and unfairly prejudice Sodexo. It should be excluded pursuant to Fed. R. Civ. P. 401-403.

2. <u>If Plaintiff is allowed to introduce evidence of Mr. Humphrey's salary, the jury must also hear the evidence regarding the other persons in Plaintiff's region.</u>

In the event that Plaintiff is permitted to admit evidence regarding the starting pay of employees with the same job title (such as Mr. Humphrey), Plaintiff must be precluded from doing so in a way that is misleading to the jury.

Specifically, on the issue of starting pay, Plaintiff ignores the fact that the highest paid person in his region with the same job title is African-American, and that the lowest paid employee in this same group is white.  As a foundational matter, this underscores the reason why Mr. Humphrey's starting salary is not relevant.  However, in the event that Mr. Humphrey's starting salary is deemed admissible, the logical consequence should be that this opens the door to Sodexo introducing the evidence of these other employees' salaries.  In short, Plaintiff should not be permitted to present comparator evidence in a cherry-picked fashion without the consequence of knowing that this opens the door to Sodexo contextualizing his lone comparison with other examples.

3. <u>Blayke Humphrey is not a valid comparator to Plaintiff on the issue of discipline.</u>

In addition to relying on evidence of Mr. Humphrey's starting pay, Plaintiff apparently also intends to rely on Mr. Humphrey as a comparator in terms of discipline. In support of this position, Plaintiff seeks to introduce emails (which post-date Plaintiff's termination) in which Sodexo received complaints from schools within Mr. Humphrey's zone of responsibility.  *See* Pl.'s Tr. Ex. 52-58. As outlined below, Plaintiff cannot establish that Mr. Humphrey is a valid comparator in terms of discipline because there is no evidence that they engaged in conduct of comparable seriousness. Moreover, even if Humphrey was a valid comparator, Plaintiff admitted in his deposition that he is not challenging the disciplinary events leading up to his termination as having been discriminatory. Any claimed relevance of the emails in question is further undermined by the fact that they post-date Plaintiff's termination.

In the Tenth Circuit, "[c]omparator employees must have engaged in 'conduct of comparable seriousness in order for their disparate treatment to be relevant.'" *See Aman v. Dillon Cos., Inc.*, 645 Fed. Appx. 719 (10th Cir. 2016) (finding comparator evidence to be irrelevant where the conduct of the alleged comparators – tardiness –  was not similar in degree to the plaintiff's).

As Sodexo has previously explained, Plaintiff was terminated after a long and documented history of disciplinary issues.  These issues began shortly after his hiring, and included multiple disciplinary write-ups.   Moreover, Plaintiff was placed on performance improvement plans by two different supervisors.

In attempting to argue that Humphrey engaged in "conduct of comparable seriousness," Plaintiff fails to meet his burden. In fact, Plaintiff does not seriously intend to take this burden on at trial, as evidenced by the fact that he has not listed any of Mr. Humphrey's performance records as exhibits.  Instead, Plaintiff apparently intends to rely on a handful of emails from school personnel complaining about issues at schools within Mr. Humphrey's district.  Notably, most if not all of the emails Plaintiff relies on in this regard occurred after Plaintiff's termination.   Indeed, some of the emails post-date Plaintiff's termination by 1-½ years.  *See* Pl.'s Tr. Ex. 52-58

The Tenth Circuit has cautioned against the use of comparator evidence that occurs after the adverse action that is being challenged.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1233–34 (10th Cir. 2000).  In *Kendrick*, the Court noted as follows:

> [T]he fact that the Taylor incident occurred more than a year and a half after Penske's decision to terminate Kendrick also weakens its evidentiary value. Employers' disciplinary practices necessarily change over time, and it would be inappropriate for courts to penalize employers who have modified their practices over a substantial period of time in an effort to better address their business needs.

*Id.*

Finally, even if Plaintiff could meet the threshold to show that Mr. Humphrey was a valid comparator, such evidence would still be irrelevant because Plaintiff admitted that he is not challenging any of the disciplinary actions ***leading up to*** his termination as having been discriminatory. (Ex. 2, Pl. Dep., 67:13-20). Thus, while Plaintiff may believe the disciplines or evaluations leading up to his termination were unfair, they were undisputedly not based on race. As such, there is no relevant reason to compare his disciplinary history to that of Mr. Humphrey.

4. <u>Raymond McMillon is not a valid comparator for multiple reasons and has no first-hand knowledge of Plaintiff's performance during the crucial time-period at issue</u>.

Plaintiff has identified former Sodexo employee Raymond McMillon on his final witness list to testify "as to any specific knowledge of Plaintiff's employment and Plaintiff's job performance." (*See* Final Pretrial Report, p. 30). As noted below, Mr. McMillon should be precluded from testifying because: (i) he does not have first-hand knowledge regarding Plaintiff's termination or of Plaintiff's performance during the relevant time-period; (ii) the lay testimony of a co-worker regarding Plaintiff's performance is not relevant; and (iii) Mr. McMillon is not a valid comparator to Plaintiff in terms of starting salary or discipline.

Mr. McMillon, who is a member of the same protected class as Plaintiff, worked for Sodexo in the same job classification as Plaintiff from 2006 until October of 2014, when he accepted a lateral transfer to a different Sodexo unit (*i.e.*, a different division within the company working in the healthcare industry at OU Medical Center). Accordingly, as of October of 2014 through Plaintiff's termination on February 23, 2016, Mr. McMillon was not working for Sodexo at Norman Public Schools. During this crucial time frame, Mr. McMillon has no first-hand knowledge of Plaintiff's job performance and is not a competent witness on this point.  Fed. R. Evid. 602.

Notably, even if Mr. McMillon did have first-hand knowledge regarding Plaintiff's job performance, his lay opinion is not relevant on this point. As the Tenth Circuit has frequently stated: "For purposes of [the] pretext analysis, it is the perception of the decision maker, and not the [p]laintiff's own perception, which is relevant." *Mitchusson v. ONEOK, Inc*., No. CIV-04-1759-R, 2006 WL 8436394, at *3 (W.D. Okla. Mar. 31, 2006), aff'd, 232 F. App'x 848 (10th Cir. 2007) (citing *Branson v. Price River Coal Co*., 853 F. 2d 768, 772 (10th Cir. 1988); and *Pippin v. Burlington Resources Oil & Gas Co*., 440 F. 3d 1186 (10th Cir. 2006)). Likewise, third-party evaluations of Plaintiff's performance and lay opinion testimony from co-workers are also not relevant to the pretext analysis, because they fail to account for the fact that an employer is free to make performance decisions that others disagree with (even if they are unfair or unwise), so long as they are not a pretext for an unlawful motive. *See Furr v. Seagate Technology*, 82 F.3d 980 (10th Cir. 1996); *Branson v. Price River Coal Co*., 853 F.2d 768, 772 (10th Cir. 1988); *see also, Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204 (10th Cir. 1999) (holding

third party evaluation of plaintiff's job performance as irrelevant); *Brice v. Joule, Inc.*, 229 F.3d 1141 (4th Cir. 2000) ("It is the perception of the decision-maker, not the opinions of co-workers, that is relevant."). Accordingly, Mr. McMillon's view of Plaintiff's performance is not relevant and should not be admitted, particularly since Mr. McMillon was not present for the last 1-½ years of Plaintiff's tenure with Sodexo.

While Mr. McMillon has not been listed to testify about ***his own*** experiences at Sodexo (*i.e.*, as a comparator), Plaintiff has previously insinuated in his court papers that Mr. McMillon's starting salary somehow supports his claim. However, this is not so.

As noted above, Mr. McMillon started at Sodexo in 2006 – a full six years prior to when Plaintiff was rehired in October of 2012, and a full eight years before Blayke Humphrey's starting salary was set by Kevin Benda. Moreover, and as noted previously, Plaintiff's starting salary was set by a different supervisor who was not involved in the termination decision. Thus, the difference in Mr. McMillon's starting salary (in 2006) and Mr. Humphrey's starting salary (in 2014) has no logical connection to whether Plaintiff's termination (in 2016) was motivated by race.

Finally, Mr. McMillon cannot be said to be a valid comparator to Plaintiff in terms of discipline. As noted above, Mr. McMillon left his employment with Sodexo in Norman by virtue of a lateral transfer to another Sodexo division. His employment with Sodexo subsequently ended by virtue of misconduct – not by virtue of job performance (as was the case with Plaintiff).

In the event Mr. McMillon is permitted to testify about the limited scope of his actual knowledge of Plaintiff's performance (*i.e.*, when they overlapped in Norman from

October 2012 until October 2014), Mr. McMillon should nonetheless be precluded from making any mention of any alleged mistreatment he claims to have suffered as an employee of Sodexo. As noted above, he has not been identified as a witness on this point. He is not a valid comparator to Plaintiff (thus, making such evidence irrelevant). Further, Sodexo would be unfairly prejudiced as a result of such testimony, which is unlikely to be cured by a limiting instruction after the fact.

### G. Strawman "temporal connections" that post-date the date when the termination decision was already made.

In his summary judgment response, Plaintiff pointed out various temporal connections in an effort to establish the causal link necessary to survive summary judgment on his retaliation claim. The problem, however, is that many of the temporal connections pointed out by Plaintiff post-date September 28, 2015 – which is the date Plaintiff claims Sodexo made the decision to terminate his employment. Logically, these subsequent temporal connections do not establish a causal connection for a decision Plaintiff claims had already been made.

Similarly, Plaintiff attempts to draw connections to subsequent protected activity that postdates his first charge of discrimination in an attempt to make the temporal connection appear closer than it is. In its reply, Sodexo explained why this is inappropriate. Xia v. Salazar, 503 F. App'x 577, 579–80 (10th Cir. 2012) (rejecting the idea of measuring temporal proximity from the conclusion of the EEOC investigation rather than the date of filing, even though an employee may continue to "participate" in the ongoing investigation).

Sodexo anticipates that Plaintiff will attempt to do the same thing at trial. He should be precluded from doing so because drawing false connections that lack the logical ability to prove causation serves no relevant purpose, and instead runs the significant risk of misleading the jury, confusing the issues, and as a result, unfairly prejudicing Sodexo.

### H. **Plaintiff's Use of Incomplete Documents as Exhibits.**

During the depositions of Kevin Benda and Lisa Failing, Plaintiff insisted on using incomplete documents in an attempt to confuse witnesses. Sodexo objected to this procedure during the depositions, citing the rule of completeness outlined in Fed. R. Evid. 106. Plaintiff has continued this same strategy in his listing of trial exhibits, many of which are merely excerpts from larger documents. For example, Plaintiff lists numerous, multi-page emails, in which he only lists one page of the communication.

In addition to violating Rule 106, this practice should be precluded as a violation of Fed. R. Evid. 403 as it has a substantial risk of misleading the jury, confusing the issues, wasting time as a result of Sodexo having to invoke Rule 106 and require admission of the complete document, and ultimately resulting in unfair prejudice to Sodexo. As evidenced by the pre-trial report, this is not a document intensive case and there is little to no burden on Plaintiff to identify and mark complete copies of his exhibits.

## III. CONCLUSION.

Accordingly, Sodexo seeks an order prohibiting Plaintiff, as well as his attorneys, witnesses, and other representatives from mentioning, admitting evidence regarding, or

bringing before the jury in any manner, either directly or indirectly, any of the matters set forth above in Part II of this Motion.

Respectfully submitted,

/s/Jeremy Tubb
Jeremy Tubb, OBA #16739
Tiffany J. Wythe, OBA #21405
FULLER TUBB & BICKFORD, PLLC
201 Robert S. Kerr, Ste. 1000
Oklahoma City, OK  73102-4216
Telephone: (405) 235-2575
Facsimile: (405) 232-8384
jeremy.tubb@fullertubb.com
tiffany.wythe@fullertubb.com
*Attorneys for Defendant Sodexo*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2019, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing.  The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

Melvin C. Hall
Riggs, Abney, Neal, Turpen,
Orbison & Lewis
528 NW 12th Street
Oklahoma City, OK  73103
mhall@riggsabney.com

/s/Jeremy Tubb
Jeremy Tubb
